# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RICHARDSON, Minors.

UNPUBLISHED
August 4, 2015

No. 324223
Kalamazoo Circuit Court
Family Division
LC No. 1999-000217-NA

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court order terminating his parental rights to the three minor children pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions of adjudication), (3)(c)(*ii*) (failure to rectify other conditions), (3)(g) (failure to provide proper care and custody), and (3)(j) (reasonable likelihood that children will be harmed if returned to the parent). We affirm.[1]

Respondent first argues that the trial court erred in finding statutory grounds for terminating his parental rights.[2] "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

This case has a rather lengthy and complicated procedural history. The proceedings were originally initiated in April 2009 after respondent's stepdaughter accused him of sexually molesting her multiple times over several years. In July 2009, respondent pleaded no contest to

---

[1] The parental rights of the children's mother were previously terminated during the course of these proceedings and she is not party to this appeal.

[2] "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

these allegations for purposes of jurisdiction.[3]  However, respondent's three children were "discharged" from the proceedings because there were no allegations that he had sexually molested them.  Subsequently, respondent's children were allowed to reside with respondent.  Although the proceedings regarding respondent's stepdaughter continued after September 2009 with respect to the mother, there is no indication that respondent had any further involvement.

On June 22, 2010, respondent was arrested in St. Joseph County for domestic assault perpetrated on his then-girlfriend.  At the time of respondent's arrest, the children were found in his care.  Respondent's home was in deplorable condition.  The children appeared hungry and smelled of urine.  Respondent admitted smoking marijuana on a daily basis.  On these facts, the St. Joseph County Circuit Court assumed jurisdiction over the children and they were placed in a foster home.  The case was then transferred back to Kalamazoo County in January 2011 and combined with the ongoing proceedings involving respondent's step-daughter.

Starting in January 2011, respondent's case was monitored by Lutheran Social Services (LSS).  When LSS took over the case, it identified respondent's barriers to reunification as emotional stability, parenting skills, substance abuse, domestic violence, and housing, among others.  Respondent was referred to various services to address those issues, including a psychological evaluation, individual counseling, parenting time visits, parenting classes, a substance abuse assessment, Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings, and random drug screens.

Respondent's participation with services throughout this case was sporadic.  Despite the fact that he completed two parenting classes early in the proceedings (including one at his church), caseworkers continually expressed concerns about respondent's "hands-off" parenting approach and apparent inability to handle all three of his children.  Moreover, at no point during these proceedings did respondent ever address his domestic violence issue or satisfy LSS caseworkers that he could responsibly use marijuana—for which he obtained a medical marijuana card—while still parenting the children safely or effectively.  Finally, respondent's efforts to involve himself in the children's lives, such as by participating in their therapy sessions or educating himself about their special needs, were minimal even accepting respondent's contentions regarding transportation difficulties.

Nevertheless, by November 2013 the trial court was satisfied enough with respondent's progress that it dismissed a petition seeking to terminate his parental rights.  The trial court's reasoning was that it would never know to what extent respondent could parent the children until he was allowed substantial parenting time.  Thus, it ordered LSS to allow respondent to have increased parenting time, including unsupervised visits. By December 2013, it was apparent that these extended parenting time visits were not going well.  First, the conditions of respondent's home were not suitable.  On at least two occasions, LSS caseworkers observed that the home smelled strongly of dog feces and that there were piles of same in the basement.  During a visit in

---

[3] Respondent notes that he was never convicted of any criminal charges regarding these allegations.  He nevertheless did not contest them for purposes of jurisdiction in the instant proceeding.

May 2014, caseworkers observed that there was no working toilet or bathroom sink. And, during the latter visit, caseworkers observed loose marijuana on the bathroom floor, where it would be accessible to the children. Additionally, the parenting time visits were impacting the children negatively; they returned from extended visits hungry and unbathed. They began to display some of the behaviors, characteristic of neglect, that they displayed when they first entered foster care, such as hoarding food and eating meals very fast. Moreover, they began to display aggressive, sexualized behaviors. Respondent nevertheless blamed these behaviors on the foster parent. Further, by the end of the proceedings, respondent was missing approximately 50 percent of his parenting time visits.

In sum, the record indicates that respondent did the bare minimum during these proceedings to reunite with his children. When he was given the opportunity to have extended parenting time visits, he displayed a continuing inability to safely and adequately parent the children. Thus, the trial court did not clearly err in finding that there was clear and convincing evidence that respondent failed to rectify the conditions that led to adjudication and would not be able to do so within a reasonable time, MCL 712A.19b(3)(c)(*i*), that he failed to provide proper care and custody and would not be able to do so within a reasonable time, MCL 712A.19b(3)(g), and that the children would likely be harmed if returned to his care, MCL 712A.19b(3)(j).[4]

Respondent next challenges the trial court's determination that termination of his parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

"[T]he focus at the best-interest stage" is on the child, not the parent. *Id*. at 87. The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), and may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider the length of time the child was in foster care or placed with relatives, the likelihood that "the child could be returned to her parent's home within the foreseeable future, if at all[,]" and compliance with the case service plan. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Finally, the trial court may consider the parent's visitation history with the child. *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004).

The record contains sufficient evidence to support the trial court's best-interests determination. At the time of termination, respondent's children—ages nine, seven, and seven,

---

[4] Because only one statutory ground for termination must be proved by clear and convincing evidence, we need not address whether the trial court clearly erred in finding that MCL 712A.19b(3)(c)(*ii*) was proved. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

respectively—had spent over four years in foster care because of respondent's inability, or unwillingness, to adequately address and rectify his many barriers to reunification. Those four years do not even make up the total amount of time that the children were involved in child protective proceedings, which stem back to 2009. Thus, as their therapist opined at the termination hearing, the children were in desperate need of permanency, stability, and finality. At the time of termination, respondent was still unable to provide those necessities because he substantially failed to participate in or benefit from services and displayed a continuing inability to adequately parent the children. Further, given his failure to sufficiently participate in services or demonstrate that he could adequately parent the children over a prolonged period of time, there was no reasonable likelihood that the children could be returned to respondent's care in the foreseeable future. The children resided in a loving foster home with a foster parent who attended to their special needs and expressed an interest in adopting them. Over the course of four years, the children had come to view the foster home as their home, and at least one of the children expressed a desire to remain there. The foster home thus provided a more advantageous environment than respondent's home. Finally, while there was a bond between respondent and the children, that bond was insufficient to prevent termination of respondent's parental rights given the fact that respondent lacked the parenting skills necessary to properly care for the children. Thus, a preponderance of the evidence supported that termination of respondent's parental rights was in the children's best interests, and the trial court did not clearly err in so finding.

Respondent finally argues that petitioner failed to make reasonable efforts to reunify him with his children.[5]

"When a child is removed from a parent's custody, the agency charged with the care of the child is [usually] required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). "[A trial] court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *Id.* at 104 (internal quotations and citation omitted). "While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of [the parent] to participate in the services that are offered." *In re Frey*, 297 Mich App at 248.

The crux of respondent's argument is that his attempts to reunify with his children were hindered by an LSS caseworker who, according to respondent, was never motivated to help him reunite with the children, but was instead motivated to seek termination of respondent's parental rights. Respondent's assertion has support in the record. For example, a former LSS employee testified at a January 2013 hearing that the caseworker in question had "skewed" her parenting

---

[5] We review this unpreserved arguments for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App at 135.

time reports to reflect poorly on respondent. Moreover, in its written opinion terminating respondent's parental rights, the trial court acknowledged that the caseworker appeared less than truthful about her efforts to reunify respondent with the children—most specifically, her efforts to facilitate supervised parenting time visits by one of respondent's counselors—and generally appeared to lack motivation "to do anything to help [respondent] other than to proceed with the termination of his parental rights." Whatever the validity of these accusations, however, we find that they had no bearing on the outcome of these proceedings. As noted, this case lasted approximately four years. The caseworker in question was neither respondent's first nor his last. In fact, this caseworker's involvement was limited to the period before the trial court denied the first termination petition and so did not have the effect of prejudicing the court against respondent. The caseworker was not involved in this case for over a year before termination was ordered. And, at the September 2014 termination hearing, the trial court acknowledged that while there had been "some difficulties" with this caseworker, the caseworkers who came before and after were dedicated to reunification and tried "really hard" to assist respondent in that endeavor. Yet, even when these other caseworkers were involved in respondent's case, he largely failed to participate in services. In fact, after the caseworker in question was removed from the case, respondent's progress actually declined.

In light of these facts, there was no plain error affecting respondent's substantial rights. The record indicates that both before and after the caseworker in question was involved, LSS made reasonable efforts to provide respondent with multiple services to address his barriers to reunification. Respondent simply failed to meet his "commensurate responsibility" to participate in and benefit from those services. *In re Frey*, 297 Mich App at 248.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause